UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JODY LEE BEACH and
RHONDA B. BEACH,　　　　　　　　　　　　　　　　　Case no. 21-10762-t13

　　Debtors.

IRON HORSE WELDING, LLC,

　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　　　Adv. no. 21-1028-t

JODY LEE BEACH and
RHONDA B. BEACH,

　　Defendants.

## **OPINION**

Before the Court is Defendants' motion for partial summary judgment that most of the instances of embezzlement alleged in this proceeding (credit card charges) are outside of the statute of limitations. The parties agree that a four-year limitations period applies, and that most of the charges occurred more than four years before the complaint was filed. Plaintiff argues, however, that New Mexico's "discovery rule" tolled the statute. The matter has been fully briefed and argued. For the reasons set forth below, the Court finds and concludes that the limitations period was not tolled by the discovery rule. Defendants' motion therefore will be granted.

A.　　Facts.

The Court finds that there is no genuine dispute about the following facts:[1]

Plaintiff is a New Mexico limited liability company. Its sole owner and manager is Charles Allen Grisham.

Defendants worked for Plaintiff from about April 2010 to August 2019. Jody Beach was a mechanic and shop foreman, while Rhonda Beach was the office manager. One of Rhonda's first duties when she started work was to investigate embezzlement by the former office manager.[2]

Defendants became friends with Grisham and found him to be very generous. Grisham bought a new Toyota pickup truck and allowed Rhonda to drive it. Grisham also advanced about $65,000 to help them buy and "fix up" a house.[3]

The friendly relations soured. Defendants quit their jobs in August 2019. That month Plaintiff sued Jody Beach for breach of fiduciary duty and prima facie tort in the Second Judicial District Court, State of New Mexico, D-202-CV-201906522 (the "First State Court Action"). Plaintiff obtained a $325,000 judgment against Jody on May 28, 2021.

Plaintiff also sued Jody for breach of contract in September 2019 in the same court, D-202-cv-201907107 (the "Second State Court Action"). The case was tried in January and February 2021, but no judgment had been entered when Defendants filed this chapter 13 case. Plaintiff did not bring an embezzlement count in either action.[4]

---

[1] The Court takes judicial notice of its docket and the dockets of Iron Horse's state court actions against Mr. Beach. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

[2] Per the report Rhonda filed with the county sheriff, her predecessor embezzled at least $23,000.

[3] During the state court litigation, Mrs. Beach testified "[Alan] was very generous, and he knew I needed things, and he would tell me that he'd do anything for me. And he has helped me out. He would just tell me, 'What do you need?' And he would tell me, 'Well, I'll lend you the money,' you know, 'I'll give you the money.'" Excerpt from trial transcript of the Second State Court Action (defined below).

[4] Plaintiff asked Defendants about the credit card charges during the trial of the Second State Court Action.

Plaintiff filed a nondischargeability action against Jody in August 2021, arguing that the judgment from the First State Court Action was nondischargeable under § 523(a)(6). Because of the dischargeability of § 523(a)(6) claims in chapter 13, however, *see* § 1328(a)(2),[5] Plaintiff dismissed the proceeding.

Plaintiff filed this adversary proceeding on September 20, 2021, alleging that Defendants embezzled $136,342.67 and praying for a nondischargeable judgment in that amount pursuant to § 523(a)(4). Specifically, Plaintiff alleges that Defendants made 517 unauthorized personal purchases using Plaintiff's credit card, beginning November 27, 2012, and ending July 26, 2019. Of the total amount, $19,241.54 was charged within four years of the complaint filing date.[6] Most of the charges were made in 2013 and 2014.

Grisham alleges the following with respect to his oversight of Plaintiff's finances when the alleged embezzlement occurred:

> a. Rhonda did not "produce the general ledger (sic), accounts receivables, accounts payables and other financial information" to me.
> b. I did have access to Quickbooks; however, I know very little about Quickbooks. I only make customer invoices, do inventory, or look up customers contact information on it. The office manager oversees bookkeeping and entries into Quickbooks.
> c. I did not review the information in Quickbooks or General Ledger on a regular basis, and definitely did not review them "on a *daily* basis." I did not review the "Operating bank account, and money market account." That was Rhonda's job as the office manager, whom I hired and relied on to make and keep those records.
> d. I did not review "the records on a daily basis." I did check the accounts receivable and accounts payable from time to time. I did not question Rhonda about the records or her doing her job.
> e. Rhonda did not "produce the monthly credit card statements" to me "each month." In fact, she never did and as it turns out she was hiding them from me.
> f. It is unknown to me what Rhonda actually reported to the CPA. I did not review the Quickbooks, or the Quickbooks backups, bank statements, credit card statements, payment of 941s or CRS payments for accuracy. I employed and relied

---

[5] Unless stated otherwise, all statutory references are to 11 U.S.C.
[6] In count II, Plaintiff sought a § 523(a)(6) nondischargeability judgment for about $72,000, based on money Plaintiff allegedly gave Defendants to buy and/or remodel a house. This count was dismissed voluntarily for the same reason the other adversary proceeding was dismissed.

> on Rhonda to keep accurate records for the company. That was her job.
>
> g. When the CPA came to the office, I would only sign the state and federal tax documents, or "quarterlies" required by the CPA. I did not review the reports with Rhonda or the CPA, nor did they go over them with me.

Grisham also alleges:

> The electronic Chase credit card statements were emailed to Rhonda alone. The statements were then sent to her at rbeach@ironhorsewelding.net and/or a second email address my current office manager has recently discovered. . . . At some point during her employment, Rhonda also requested that we put the credit card on automatic payment, which I agreed [sic]. Because the credit card was on automatic payment, Rhonda did not present the credit card statements to me for review when I signed the checks for the other company bills. There was no check to sign for the Chase credit card.

Finally, Grisham alleges that "Rhonda purposely concealed the embezzlement of company funds by physically altering the company credit card statements." She did this, Grisham alleges, by carefully cutting pieces of paper with the names of Plaintiff's legitimate vendors and taping or pasting them over the unauthorized charges. The record does not indicate how many altered entries there are. It does not appear that Grisham saw the altered statements until Defendants had left.

In August 2019, after Defendants had quit, Plaintiff ordered copies of the credit card statements from the issuer. Grisham claims to have discovered the embezzlement at that time.

Defendants deny any embezzlement and state that Grisham knew about and consented to the charges.

B. <u>Summary Judgment</u>.

Motions for summary judgement are governed by Fed. R. Civ. P. ("Rule") 56, made applicable by Fed. R. Bankr. P. 7056. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "party

seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion and identifying [the portions of the record that] demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.

C. §§ 523(a)(4) and 1328(a).

§ 523(a)(4) excepts from discharge "any debt—for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" § 1328(a)(2) incorporates § 523(a)(4).

D. The Statute of Limitations for Embezzlement Claims.

Defendants argue that Plaintiff is not entitled to a $136,342.67 embezzlement judgment because, inter alia, most of the credit card charges at issue are beyond the statute of limitations for embezzlement. NMSA § 37-1-4 provides:

> [claims] founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four years.

The parties agree that this four-year limitations period applies to embezzlement.

E. The Discovery Rule.

NMSA § 37-1-7 provides a possible exception to the four-year statute of limitations:

> In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved.

In addition to this statutory "discovery rule," New Mexico has adopted a common law discovery rule for actions not covered by § 37-1-7, such as medical malpractice, legal malpractice, personal injury, and products liability. *See, e.g., Sharts v. Natelson*, 118 N.M. 721 (S. Ct. 1994) (legal malpractice); *Roberts v. Southwest Cmty Health Servs.*, 114 N.M. 248, 255-56 (S. Ct. 1992) (medical malpractice); *Williams v. Stewart*, 137 N.M. 420, 424 (Ct. App. 2005) (personal injury);

*Martinez v. Showa Denko, K.K.*, 125 N.M. 615, 620 (Ct. App. 1998) (products liability); *Gerke v. Romero*, 148 N.M. 367, 370-71 (Ct. App. 2010) (exposure to toxic substances).

F. <u>Jury Question</u>.

Often, whether a plaintiff may use the discovery rule to overcome a statute of limitations defense poses a question of fact for a jury. *See, e.g., Williams*, 137 N.M. at 425 ("Historically, the courts of this state have characterized the application of the discovery rule as a jury question, particularly when conflicting inferences may be drawn."); *Sandel v. Sandel*, 463 P.3d 510, 520 (Ct. App. 2020) ("our courts generally characterize the application of the discovery rule as a jury question"); *Brunacini v. Kavanagh*, 117 N.M. 122 (Ct. App. 1993) (discovery rule is generally a question of fact). However, the discovery rule can be applied as a matter of law. *See Sharts*, 118 N.M. at 726 ("where the undisputed facts show that [the client] knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law."); *Sandel*, 463 P.3d at 520 (same); *Brunacini*, 117 N.M. at 127 (same); *Trubow v. New Mexico Real Estate Comm.*, 2022 WL 1316270, at *4 (N.M. App.) (same).

G. <u>May Plaintiff Invoke the Discovery Rule</u>?

Whether statutory or common law, the discovery rule tolls the running of the statute of limitations until the plaintiff "knew or should have known" about the claim. *See, e.g., McNeill v. Burlington Resource Oil & Gas Co.*, 141 N.M. 212, 217 (Ct. App. 2006) (discussing § 37-1-7, the court held that "in New Mexico, a cause of action arises not necessarily at the time of injury, but rather at the time a plaintiff knows or should have known of the claims"); *Duerinck v. Board of Supervisors, Grant Soil and Water Conservation Dist.*, 2019 WL 2745190, at *1 (N.M. App.) (quoting *McNeill*); *Wilde v. Westland Develop. Co., Inc.*, 148 N.M. 627, 634 (Ct. App. 2010) (same); *O'Brien v. Montoya*, 2016 WL 4368536, at *3 (N.M. App.) ("In other words, the action

accrues when the plaintiff knew or should have known the relevant facts"). For cases discussing the non-statutory discovery rule, see *Sharts*, 118 N.M. at 724, 726 (the limitations period begins when plaintiff discovers or should discovered the claim, and/or knew or should have been aware of the claim); *Haas Enterprises, Inc. v. Davis*, 134 N.M. 675, 677 (Ct. App. 2003) (same); *LaMure v. Peters*, 122 N.M. 367, 372 (Ct. App. 1996) (same); *Cahn v. Word*, 798 Fed. App'x 244, 249 (10th Cir. 2020) (quoting *Sharts*).

      1.    <u>Knowledge of the claim</u>. Once a plaintiff knows the facts upon which a cause of action is based, the claim has been "discovered" and the limitations period begins to run. *See, e.g., Sharts*, 118 N.M. at 724 ("the limitations period . . . commences when . . . the client discovers . . . the cause of action"); *Butler v. Deutsche Morgan Grenfell, Inc.*, 140 N.M. 111, 117-18 (Ct. App. 2006) ("cause of action does not accrue for purposes of calculating the limitations period until the plaintiff discovers . . . the facts that underlie his or her claim").

      For purposes of the discovery rule, knowledge of the claim may be imputed to the plaintiff. In *Martinez*, for example, the court stated:

> Because of the discovery rule's requirement of reasonable diligence, the tolling of the applicable statute of limitation by the rule ends when the person claiming the benefit of the rule acquires knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action. *This is so because the knowledge of such matters is, in the law, equivalent to knowledge of the cause of action itself for limitation purposes.*

125 N.M. at 621, quoting *Bell v. Showa Denko, K.K.*, 899 S.W.2d 749, 754 (Tex. App. 1995) (italics added). Some cases use the term "inquiry notice" instead of imputed knowledge, but the meaning is the same. *See, e.g., O'Brien*:

> Sometimes termed "inquiry notice," the discovery rule's standard requires "knowledge of facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the concealed cause of action."

2016 WL 4368536 at *3, quoting *Yurcic v. City of Gallup*, 298 P.3d 500, 503-04 (N.M. App. 2013); *see also Rhinehart v. Nowlin*, 111 N.M. 319, 328 (Ct. App. 1990) ("Whatever puts a party upon inquiry is sufficient 'notice' and the party has a duty to inquire or he will be chargeable with all the facts."); *see generally TRW Inc. v. Andrews*, 534 U.S. 19, 30 (2001) (if the duty of inquiry arises, plaintiff is charged with whatever knowledge an inquiry would have revealed).

Here, there is a dispute about whether Plaintiff had actual or imputed knowledge of the alleged embezzlement when it occurred. Defendants contend that Grisham knew they were using Plaintiff's credit card to pay personal expenses. If true, Grisham would have had, at a minimum, imputed knowledge of the embezzlement claims. Grisham disputes any such knowledge and claims he knew nothing about the challenged charges until August 2019. Because there is a genuine dispute about this material fact, summary judgment cannot be based on a finding that Plaintiff knew about the challenged charges shortly after they were made.

2. <u>Should Plaintiff have known about the alleged embezzlement</u>? The other way a plaintiff can lose the benefit of the discovery rule is if it *should have* known about the claim. In *Hardin v. Farris*, 87 N.M. 143 (Ct. App. 1974), the Court of Appeals construed the predecessor statute to NMSA 37-1-7[7] and held:

> [T]he statutory limitation on the time for bringing the action will not begin to run until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered.

87 N.M. at 146. Similarly, in *In re Angel Fire Ski Corp.*, 176 B.R. 570 (Bankr. D.N.M. 1995), the court held:

> The statute of limitations for actions based on fraud or mistake begins to run at the time the aggrieved party discovers the fraud or mistake. N.M.S.A. § 37–1–7 (Repl. Pamp. 1990). . . . [T]he courts of New Mexico have read into this statute the requirement that *the aggrieved party must exercise reasonable care and diligence*

---

[7] 1953 NMSA § 23-1-7. The language is the same.

> *in their own actions . . . Roscoe v. U.S. Life Title Ins. Co.,* 105 N.M. 589, 734 P.2d 1272 (1987) . . . .

176 B.R. at 580 (italics added); s*ee also Williams*, 137 N.M. at 424 (cause of action accrues when the plaintiff discovers or with reasonable diligence should have discovered that a claim exists); *Roberts*, 114 N.M. at 255 (same); *Brown v. Behles & Davis*, 135 N.M. 180, 183 (Ct. App. 2004) (statute of limitations starts to run when plaintiff discovers, or through reasonable diligence should discover, the claim); *Sharts*, 118 N.M. at 724 (same); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 162-63 (Ct. App. 1993) (same); *Maestas v. Zager*, 141 N.M. at 154, 159 (same); *Butler*, 140 N.M. at 117-18 (the statute does not begin to run "until the Plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim"); *Yurcic*, 298 P.3d at 506 (discovery occurs when Plaintiff knows or, with reasonable diligence should know, of his injury and its cause); *Gerke*, 148 N.M. at 371 (same); *McNeill*, 143 N.M. at 749 (cause of action arises when the Plaintiff discovers or with reasonable diligence should have discovered the claim).

These cases require a plaintiff to exercise reasonable or ordinary diligence before it can enjoy the benefits of the discovery rule. After all, if the facts underlying a claim are readily available, there is no need for a discovery rule. The rule is designed to protect plaintiffs whose claims are difficult to ascertain despite reasonable diligence. Extending the limitations period for claims "in plain view" would unfairly benefit negligent plaintiffs and harm defendants who did nothing to conceal potential claims.

The Court finds that there is no genuine issue of material fact that Plaintiff failed to exercise ordinary or reasonable diligence to discover the alleged embezzlement. Reasonable diligence required Grisham, Plaintiff's sole owner and manager, to maintain at least some oversight over Plaintiff's spending, including credit card spending. This is particularly true in light of the

$23,000+ embezzlement by Rhonda's immediate predecessor. Reviewing Plaintiff's monthly bank account and credit card statements would have been a quick, easy, and effective way for Grisham to have exercised financial diligence.

Plaintiff argues that Rhonda successfully hid the challenged charges from Grisham by getting the credit card issuer to email the statements to her email address; switching to automatic payment of the credit card account; and crudely altering some of the paper statements. Assuming the truth of these allegations, they do not raise a fact issue about Plaintiff's reasonable diligence. As the sole owner and manager, Grisham had the absolute right to insist on receiving and reviewing the monthly credit card statements. Grisham should have seen to it that the statements were emailed to *him*, not Rhonda. Rhonda would have had no choice but to accept that or be fired. No diligent business owner gives an office manager the use of the company's credit card *and* the sole right to monitor the account. Rhonda may have lulled Grisham into trusting her (Defendants hotly deny this), but that is no excuse for abandoning basic managerial diligence. All Grisham had to do was say "no" when Rhonda tried to obtain sole oversight over the credit card account.

Of course, Grisham was not obligated to be diligent. He owns Plaintiff and can run it as he sees fit. If Grisham, having just suffered the outrage of embezzlement, decided to give Defendants the company credit card without oversight, that was his business. Foregoing ordinary diligence had serious consequences, however. First (according to Plaintiff), Defendants took up where the former office manager left off and began stealing from Plaintiff openly and obviously-- there are sneaky ways to embezzle from your employer, but paying personal expenses with the company credit card is not one of them.

Second, Plaintiff lost the protection of the discovery rule. It would have been very easy to monitor Plaintiff's credit card account, but Grisham elected not to. The Court is not blaming the

victim; if Defendants embezzled, lack of oversight is no excuse for such a despicable act. Nevertheless, the Court finds and concludes that Plaintiff cannot invoke the discovery rule after deciding not to review the company's credit card spending.

## CONCLUSION

The four year statute of limitations began to run on the challenged credit card charges shortly after they were incurred. By the time Plaintiff sued, the statute had run on all but about 25 of the charges. New Mexico's discovery rule did not save the claims because, had Plaintiff exercised ordinary diligence, it would have discovered them instantly. Defendant's motion for partial summary judgment will be granted by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 15, 2022
Copies to: counsel of record